

FILED

APR 1 8 2019

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DARIN BROCKINGTON,<br><br>                Plaintiff,<br>vs.<br><br>DEBORAH BROWN, in her individual capacity, NANCY SMITH, in her individual capacity, KATHERINE R. MAXWELL, in her individual capacity,<br><br>                Defendants. | CV 18–65–M–DLC<br><br>ORDER |

      Plaintiff Darin Brockington alleges five separate causes of action in his Complaint against Defendants Deborah Brown, Nancy Smith, and Katherine Maxwell. (Doc. 1.) These claims involve accusations that his ex-wife Brown, together with her attorney Maxwell, and the court appointed guardian ad litem Smith, conspired to deprive Brockington of his constitutional right to parent and breached the terms of the parenting plan. He raises these claims under 42 U.S.C. §§ 1983, 1985–86, and 28 U.S.C. §§ 1331, 1332, 1343. Defendants each move separately to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 6; 8; 10.) Because the Court agrees that Brockington has not stated any plausible claim to relief, the Court dismisses the Complaint in its entirety. The

Court will address each claim separately below.

## STANDARD OF REVIEW

A complaint must include a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). To withstand a motion to dismiss, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. It must plead facts sufficient "to state a claim for relief that is plausible on its face." *Id.* at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings that are no more than "legal conclusions," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to the assumption of truth. *Id.* at 633.

## BACKGROUND

The Complaint arises from a contentious divorce between Brockington and

Brown. Their marriage dissolved in 2007 when their only child, A.E.B. was 7 years old. (Doc. 1 at 2.) The following year, the Eleventh Judicial District Court in Flathead County entered a parenting plan, granting Brown primary custody, and granting Brockington parenting time with A.E.B. "any time he was in Montana, for a period not to exceed ten days." (*Id.* at 23.) Additionally, the parenting plan provided Brockington with parenting time during the summers of 2008, 2009, and 2010 to vary in length from 43 to 49 days. (*Id.*) The parenting plan did not address any summer visits after the year of 2010, but Brown and Brockington continued the practice until the summer of 2016. (*Id.*)

The allegations in the Complaint began in 2014, when Brown filed a motion with the district court attempting to modify the terms of the parenting plan. (*Id.*) Brown sought to limit Brockington's parenting time to just those visits in the State of Montana. (*Id.*) The district court granted Brockington's motion to dismiss because Brown did not seek to informally resolve the dispute, according to the terms of the parenting plan. (*Id.*)

Brown and Brockington then met with Smith, a court appointed guardian ad litem, to resolve the disagreement concerning summer visitation. (*Id.*) They were unable to do so. (*Id.*) Smith then filed a report with the district court, recommending that Brockington's visits be limited to Montana, that his overall time with A.E.B. be reduced to one or two weeks, and to remove the plan's

requirement of a mandatory phone call. (*Id.* at 3–4.) Brown then filed a motion asking the district court to adopt Smith's recommendation. (*Id.* at 4.) After being served with the motion, Brockington, who is a member of the armed forces and was serving abroad at that time, successfully moved to stay the proceedings under the Servicemembers Civil Relief Act ("SCRA"). (*Id.*) Following this, Smith filed a motion asking the district court to amend the parenting plan in the interim. (*Id.*) The district court never acted on that motion. (*Id.*)

In 2015, preparing to return to the states, Brockington asked Brown to plan for A.E.B. to visit him in Virginia for one month. (*Id.*) Brown did not do so. (*Id.*) On the advice of her attorney, Maxwell, Brown did not believe that the parenting plan was still valid. (*Id.* at 4–5.) Brown also consulted with Smith. (*Id.* at 5.) A.E.B. did not visit Brockington the summer of 2015, which Brockington claims is a violation of his constitutionally protected right to parent. (*Id.*)

## DISCUSSION

### I. Deprivation of Civil Rights

First, Brockington alleges that Smith "engaged in a pattern and practice of unlawful behavior" to deprive him of his "fundamental rights to due process, equal protection under the law, and freedom of association protections for his parent-child relationship from undue governmental interference" under 42 U.S.C. § 1983.

(Doc. 1 at 5.) Smith argues that she is entitled to absolute judicial-immunity for work performed in her capacity as guardian ad litem, and that Brockington has failed to state a claim. (Doc. 7 at 4–7, 8–10.)

The Court agrees that Brockington has not stated a claim. Brockington alleges that Smith "engaged in a pattern and practice of unlawful behavior" to deprive Brockington of various civil rights. This is a legal conclusion that is not entitled to the presumption of truth. To support this claim, Brockington alleges only that Smith unsuccessfully mediated a parenting dispute, made a recommendation to the district court regarding a parenting arrangement, filed a motion with the district court to amend the parenting plan while the stay was in effect, and consulted with Brown about summer visitation. While Brockington is not required to state a probable claim, he must do more than allege the mere possibility that Smith engaged in conduct designed to deprive him of his constitutional rights. From these allegations, the Court can infer no evidence of conduct designed to harm Brockington or exceed the spirit and scope of her duties as guardian ad litem. Brockington has pleaded nothing more than a "threadbare recital of the elements of a cause of action." *Ashcroft*, 556 U.S. at 633.

While the Ninth Circuit has not definitively ruled that guardians ad litem are entitled to absolute quasi-judicial immunity, the court's opinion in *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003) (indication that whether social workers

or court-related personnel are entitled to absolute judicial sovereign immunity depends on "the specific function performed, and not the role or title of the official"), would seem to suggest that the actions taken by Smith—mediating a parenting dispute, and rendering a recommendation to the court regarding parenting—would entitle her to immunity. Therefore, the Court will dismiss this claim.

## II. Breach of Contract

In his second claim Brockington alleges that Smith is in breach of contract. (Doc. 1 at 6.) Brockington does not specify precisely how or when Smith breached the contract, nor does he specify the contract at issue. Brockington indicates only that Smith "intentionally violated a court order to equally share costs between the parties" and was "motivated by a discriminatory animus on the basis of his race and her personal desire to enact a reprisal for his special protections granted by a SCRA stay." (*Id.*) With not much to go on, the Court assumes that the contract indicated is the parenting plan.

First, it's a matter of basic contract law that a nonparty to a contract cannot be in breach of contract. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). By its terms, a contract binds only those who are parties to it. It stretches the Court's imagination to assume that Smith, the court appointed guardian ad litem, is a party to the parenting plan. Similarly, Brockington alleges

no specific facts to indicate when, where, or how Smith violated the district court's order to split costs. Finally, Mr. Brockington's bald assertion that Smith was motivated by racial animus when she breached the contract is not material. There is no requisite mental state for breach of contract.

Setting aside any questions regarding the Court's jurisdiction to hear this claim,[1] the Court concludes that Brockington has not stated any plausible claim for breach of contract against Smith.

### III. Civil Rights Conspiracy

Brockington alleges that Smith, Maxwell, and Brown engaged in a conspiracy to deprive him of his right to parent under 42 U.S.C. § 1985(3). (Doc. 1 at 6.) Defendants claim that Brockington has not stated a claim for relief. A claim for a civil rights conspiracy requires a plaintiff to show: "(1) the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; (2) an act in furtherance of the conspiracy; and (3) a resulting injury." *I.H. by & through Hunter v. Oakland Sch. for Arts*, 234 F. Supp. 3d 987, 994 (N.D. Cal. 2017) (citing *Addisu v. Fred Meyer*, Inc., 198 F.3d 1130, 1141 (9th Cir. 2000)). "The language

---

[1] Brockington alleges that his claims arise under federal question and diversity jurisdiction. While no party challenges the Court's jurisdiction to hear Brockington's breach of contract claim, the Court is doubtful that diversity is proper in this case. Brockington alleges no specific amount in controversy, and it is not clear from the face of the Complaint that any damages suffered, emotional or otherwise exceed $75,000. While Brockington could ask the Court to hear this claim as supplemental to his federal claims, he has not done so.

requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

In support of this claim, Brockington contends: (1) that he is African American; (2) that Smith requested the court modify the terms of the parenting plan after Brockington and Brown attempted, but were unable, to resolve their disagreements in an informal mediation facilitated by Smith; (3) that Smith asked the district court to stop Brockington's parenting time after Brockington successfully moved the court to stay the motion to modify while he was serving abroad; (4) that communication between Smith and Brown indicated "an agreement to avoid summer parenting time in 2015, contrary to the parties' de facto parenting plan[]"; and (5) that Smith "engaged in a pattern and practice of unlawful behavior [with] the sole cause" to deprive Brockington of "his fundamental rights to due process, equal protection under the law, and freedom of association protections for his parent-child relationship from undue governmental interference." (Doc. 1, 3–5.)

Discounting the legal conclusions from the facts alleged above, the Court is not left with sufficient information to infer that Smith and Brown took any action to modify the parenting plan or to limit Brockington's parenting time *because*

-8-

Brockington is African American. Nor is there any indication that Maxwell advised Brown that it was her legal opinion that there was no parenting plan in place *because* Brockington is African American. In short, there is nothing in the factual allegations that creates any plausible inference of racial prejudice, which is necessary element of a conspiracy under section 1985. This claim is dismissed.

## IV. Civil Rights Neglect

Brockington next alleges civil rights neglect under 42 U.S.C. § 1986 against Maxwell. (Doc. 1 at 8.) He complains that she "had knowledge of the wrongs conspired to be done, and [had] power to prevent or aid in preventing the commission of the same," "failed in her duty to be truthful and advocate on behalf of her client within the bounds of the rule of law," "her silence and her misconduct was without precedent," and she "failed to follow the Rules of Professional Conduct" all of which caused Brockington mental and emotional injury. (*Id.* at 8–9.)

However, a viable civil rights conspiracy is a necessary predicate to a civil rights neglect claim. *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990). Where a plaintiff fails to state a claim under section 1985, a Court must dismiss a section 1986 claim. *Id.* Because the Court has already concluded that Brockington failed to state a plausible conspiracy claim, his section 1986 claim similarly fails. Further, Brockington's bald assertion that Maxwell

intentionally undertook an improper legal opinion is not justified by the facts alleged. Brockington alleges only that Maxwell advised Brown that there was no parenting plan in place in the summer of 2016. Even if ultimately incorrect—and the Court takes no position on this question—Maxwell's legal opinion is not clearly unreasonable given the fact that the parenting plan did not indicate any summer visitation past 2010. Having failed to provide any factual basis from which the Court can plausibly infer any negligence, malpractice, or willful disregard of the law, the Court will dismiss this claim.

## V. Violation of SCRA

Finally, Brockington alleges that all of the Defendants filed motions with the district court in violation of SCRA. (Doc. 1 at 9.) However, the Complaint specifically recognizes that the district court took no action in response to this motion filed by Smith after it implemented the stay. Therefore, Brockington cannot reasonably claim that he was harmed by any alleged violation.

Accordingly, IT IS ORDERED that Defendants' motions to dismiss (Docs. 6; 8; 10) are GRANTED.

DATED this 18th day of April, 2019.

/s/ Dana L. Christensen
Dana L. Christensen, Chief Judge
United States District Court